## ESCAMILLA v. PINGREE et al.

No. 2594.   Decided April 30, 1914 (141 Pac. 103).

1. MORTGAGES—FORECLOSURE BY ACTION—NATURE OF REMEDY.   An action on a note and to foreclose a mortgage given as security was purely equitable, and its character as such was not affected by the fact that a jury was called to pass on the facts, nor were the province and duties of the trial or appellate court affected thereby.   (Page 423.)

2. TRIAL—VERDICT—FORM—EQUITABLE ACTION.   The verdict in an equitable action at most is purely advisory, and, where directed by the court, it did not even amount to that, and hence error could not be predicated upon its form.   (Page 423.)

3. MORTGAGES — FORECLOSURE BY ACTION — EVIDENCE — SUFFICIENCY.   Evidence, in an action on a note and mortgage of which the ownership was disputed, held insufficient to overcome the presumption that the payee was the legal owner, and of the correctness of the trial court's judgment for the payee.   (Page 424.)

4. BILLS AND NOTES—ACTIONS—PRESUMPTIONS.   The presumption that the payee was the legal owner of an unindorsed note was not affected by the fact that her father had possession thereof and delivered it to another before his death.   (Page 425.)

5. APPEAL AND ERROR—REVIEW—PRESUMPTIONS—JUDGMENT IN EQUITABLE ACTION.   The correctness of the proceedings and judgment in an equitable action is presumed, and, unless the presumption is clearly overcome, the judgment must prevail.   (Page 425.)

APPEAL from District Court, Second District; *Hon. N. J. Harris,* Judge.

Action by Josephine Flint Escamilla against James Pingree, administrator of the estate of Richard Flint, and others.

Judgment for plaintiff. Defendant named appeals.

AFFIRMED.

*Boyd, De Vine* and *Eccles,* and *J. N. Kimball* for appellant.

*C. R. Hollingsworth* and *W. M. McCrea* for respondent.

FRICK, J.

This action was brought by the plaintiff, hereafter called respondent, as the payee, to recover on a certain promissory note, and to foreclose a mortgage which was made and delivered to secure the payment of said note. The defendants Joseph H. and Martha Jane Hellewell were made such as the makers of said note and mortgage, and the Wheelwrights were made parties as subsequent purchasers of the real estate described in said mortgage. James Pingree, as administrator of the estate of Richard Flint, deceased, was also made a party to the action for the reason that he, as such administrator, claimed some interest in the mortgaged premises. The Wheelwrights appeared and in their answer admitted the execution and delivery of the note and mortgage, admitted that they claimed some interest in the real estate described in said mortgage, setting forth that they purchased the premises, and as part of the purchase price thereof had assumed and agreed to pay said note and mortgage, that they were, and always had been, able and willing to pay said note, but could not safely do so because of the disputes existing between the respondent and said administrator respecting the ownership of said note and mortgage; the

said administrator claiming that the same were owned by his intestate during his lifetime, and were the property of his estate. The administrator also answered respondent's complaint, and in his answer denied that the respondent was the owner of said note and mortgage, and averred that the same were owned by his intestate during his lifetime and now belong to his estate, setting forth the facts respecting the said claim of ownership. The parties entered into a stipulation whereby it was in effect agreed that the Wheelwrights might pay into court the money due on said note and mortgage. The court approved the stipulation, and the money was paid to the clerk of the court, and he was directed to hold the same until it was determined by the court to whom it should be paid. The respondent and said James Pingree, as administrator, then proceeded to a trial to determine who should have judgment for the money paid as aforesaid. A jury, it seems, was impaneled to try the question of fact, and, after hearing the evidence produced by both sides, the court directed the jury to return a verdict in favor of respondent, which was done, and judgment was accordingly entered, from which the administrator alone appeals.

Counsel for appellant have assigned a number of errors realtive to the admission of evidence, and in refusing to strike certain evidence from the record. In view of the conclusions reached, all those assignments are immaterial, and we shall not discuss them. The case is purely equitable, and the mere fact that a jury was called to pass on the facts in no way affects the character of the case. Nor did that fact in any way affect the province or duties of the trial court. Nor can it affect those of this court relative to equity cases. In view of this, we shall not discuss the objection that is made to the form of the verdict. The verdict in equity cases, at most, is merely advisory; but, in view that in this case the court directed what the verdict should be, it does not even amount to that, and hence no error can be predicated upon the form of the verdict.

In view of the record there is but one question in the case, and that is whether appellant has overcome the presumption

that the judgment appealed from is right, and that the proceedings culminating in the judgment were **3** without prejudicial error to any of the substantial rights of the appellant. The ultimate question in issue was: Which one, the respondent or appellant, was the owner of the note and mortgage sued on? The note was made payable to the respondent or order, without any conditions whatever, and she had never indorsed it in any form. It was, however, claimed by appellant that the consideration for the note was money which belonged to his intestate, who was the father of respondent. It was appellant's misfortune, however, that he could produce no substantial evidence to sustain his claim in that regard. Appellant's intestate himself clearly negatived that contention. While it is true that, although the note and mortgage were made payable to respondent or her order, yet her father, appellant's intestate, had possession of them from the time they were made until a short time before his death, at which time he turned them over to appellant. Before this action was commenced by the respondent, and while appellant's intestate had possession of the note and mortgage, respondent, it seems, placed the matter into the hands of a lawyer who lived in the town where she and the deceased both lived. The lawyer wrote a letter directed to the deceased in which the lawyer asked the deceased to call at the former's office. The deceased called, and the lawyer, in regard to the interview had between them, testified as follows:

"He (the deceased) told me he had received our letter and wished to know what we wanted to see him about. I told him that we wished to know if he claimed an interest in the Hellewell mortgage, and on what ground he made the claim. He stated he did claim the money due on the mortgage, that he claimed all of it, and that his reasons for claiming it were that he was out more than the amount due on the mortgage on account of the loss he had sustained at the hands of his daughter, Josephine Flint's [respondent's] former husband, a Mr. Stanley. We did not go into the claim further than that."

While the deceased claimed the money due on the note, yet his claim in no way sustains appellant's contention that the deceased furnished the consideration for the note and mortgage. Upon the contrary, it clearly negatived that contention. There is other evidence of a similar character from which it might be inferred that the deceased did not claim to be the owner of the note and mortgage, and that in making the loan he acted as attorney in fact for the payee; but it is not necessary to set it forth here. The question, therefore, is: Is there sufficient evidence in this record to overcome the presumption that respondent was the owner of the note and mortgage in question?

Appellant's counsel in his brief contends, and in his oral argument claimed, that the fact that the deceased had possession of the paper constituted *prima facie* evidence of his ownership, and that respondent had not overcome that presumption. We do not understand the law to be as claimed by counsel, nor do the cases cited by him **4, 5** sustain his contention. Upon the other hand, the authorities are to the effect that, where a promissory note is made payable to a certain person or order, the possession of such paper by another without indorsement by the payee does not affect the presumption of ownership. In passing on that question in *Rice v. McFarland,* 41 Mo. App. 490, the rule in the headnote is stated thus:

"The possession of an unindorsed note does not relieve the holder from the presumption the note still belongs to the payee."

In *Dorn v. Parson's Adm'x,* 56 Mo. 601, the rule is stated in the following words:

"The possession of a note, not payable to bearer nor indorsed in blank, by a third person is not even *prima facie* evidence of ownership."

In *Cavitt v. Tharp,* 30 Mo. App. 131, the law is stated thus:

"Possession of an unindorsed promissory note by one other than the payee is no evidence of ownership in the holder."

In 2 Ency. Ev. 517, the law upon the subject is thus briefly stated:

"The payee of a note is presumed to be the owner until the contrary is shown."

To the same effect are *Bowers v. Johnson,* 49 N. Y. 432; *Richardson v. Moffit-West Drug Co.,* 92 Mo. App. 515, 69 S. W. 401; *Hair v. Edwards,* 104 Mo. App. 213, 77 S. W. 1089; 1 Daniel's Neg'l. Insts. (6th Ed. 1913) sections 664a and 741. Although the deceased had possession of the note, and before his death turned it over to appellant, yet that possession in no way affected the presumption that respondent, the payee thereof, was the legal owner, and until that presumption is overcome by some legal and competent evidence, the judgment in her favor should not be disturbed. Practically all that appellant offered to rebut the presumption was his own evidence that he remembered when the note and mortgage were made; that the deceased "turned the money to Joseph Hellewell (one of the makers of the note) for this mortgage, $200 of which was a cashier's check given by our bank to the deceased. I cannot state . . . what the other money was." In addition to this, there were two letters written by respondent to her brother; but there is nothing in those leters which would authorize an inference even that the note and mortgage did not belong to her. Appellant's evidence, therefore, was at most merely conjectural. There was therefore not sufficient evidence to dissipate the presumption that respondent was the owner of the note and mortgage in question. But suppose it be assumed that there are a few isolated facts from which an inference against respondent's ownership might be drawn; yet the evidence in that respect is so weak and inconclusive and of such a character that inferences might be drawn from it both ways. It therefore does not rise to the dignity of evidence. This is, as we have pointed out, an equity case, and therefore, unless

the presumption of the correctness of the proceedings and judgment is clearly overcome, the judgment must prevail. Appellant has not overcome the presumption, and hence the judgment should be, and it accordingly is, affirmed. Costs to respondent.

McCARTY, C. J., and STRAUP, J., concur.