## JENKINS v. NICOLAS et al.

No. 4015.   Decided April 1, 1924.   (226 Pac. 177.)

1. APPEAL AND ERROR—DUTY OF REVIEWING COURT TO DETERMINE WEIGHT OF EVIDENCE IN EQUITY CASE. On appeal in equitable action, it is duty of reviewing court to determine weight of evidence, wherein it is contended it does not support finding.

2. ACTION—COURTS CAN ADMINISTER BOTH LAW AND EQUITY IN ONE ACTION. Under the Constitution and Code, courts can administer both law and equity in one action.

3. APPEAL AND ERROR—CONTENTION THAT FINDING UPON LEGAL ISSUES SO THAT EVIDENCE COULD NOT BE WEIGHED HELD WITHOUT MERIT. In action on note against maker and bank as indorser, and to foreclose chattel mortgages, contention that finding as to ownership by plaintiff of notes sued on and notes involved in counterclaim by indorser, was upon legal issues, so that Supreme Court could not examine evidence to determine its weight, *held* without merit, especially where plaintiff's ownership of note and mortgages was put in issue by pleadings.[1]

4. APPEAL AND ERROR—RULE AS TO REVIEW OF FINDINGS ON CONFLICTING TESTIMONY IN EQUITY CASE STATED. Findings based upon conflicting testimony in equity case will not be disturbed, unless it appears that court has misapplied proven facts, or that findings are clearly against weight of evidence.[2]

5. FRAUDS, STATUTE OF—AGREEMENT TO REPURCHASE NOTE NOT WITHIN STATUTE. Statute held not applicable to agreement to repurchase note by bank, though note was not indorsed by bank and was made payable to bank holding it.

6. BANKS AND BANKING—REDISCOUNTING COMMERCIAL PAPER PART OF USUAL COURSE OF BUSINESS. Rediscounting commercial paper between banks is part of usual course of business.

7. BANKS AND BANKING—BANK HELD PRECLUDED FROM CLAIMING THAT OFFICER HAD NO AUTHORITY TO BIND BANK TO PAY PERSONAL OBLIGATIONS. Bank could not claim to injustice of another, that cashier or other officer of bank had no authority to bind funds of bank to pay obligations in which he was person-

---

[1] *Escamilla* v. *Pingree*, 44 Utah, 421, 141 Pac. 103, L. R. A. 1915B, 475.

[2] *Olivero* v. *Eleganti*, 51 Utah, 475, 214 Pac. 313.

ally interested, where through long period of time bank has acquiesced in permitting such authority to be exercised.

8. BANKS AND BANKING—OFFICERS HELD PRESUMED TO KNOW OF AR-RANGEMENTS BETWEEN BANKS FOR REPURCHASING COMMERCIAL PAPER. Officers of bank must be presumed to have had knowl-edge of arrangements with another bank for discounting and repurchasing commercial paper between banks, where arrange-ment continued for several years.

Appeal from District Court, Seventh District, Carbon County; *F. E. Woods,* Judge.

Action by Edward E. Jenkins, receiver of the National City Bank, substituted plaintiff, against Auguste Nicolas and another. Judgment for plaintiff, and defendants appeal.

REVERSED, and remanded with directions.

*L. A. McGee,* of Price, and *Martineau & Evans,* of Salt Lake City, for appellants.

*Bagley, Fabian, Clendenin & Judd,* of Salt Lake City, and *B. W. Dalton,* of Price, for respondent.

GIDEON, J.

The National City Bank of Salt Lake City, on November 19, 1921, instituted this action against the defendant Auguste Nicolas as the maker of a promissory note and the defendant Carbon County Bank as an indorser. The action is for judgment upon the note and a decree foreclosing two chattel mortgages given to secure payment of the note. Sub-sequently Edward E. Jenkins was appointed receiver of the National City Bank, and was substituted as party plaintiff.

The complaint alleges the execution of the note and mort-gages, the assignment of the same to plaintiff, and that plain-tiff is now the owner and holder of said renewal note and chattel mortgages. The prayer of the complaint is for a fore-closure of the mortgages, sale of the property, and for a defi-

ciency judgment, if the proceeds of the sale are insufficient to pay the expenses of the foreclosure, costs of suit, principal, interest, and attorneys' fee.

The defendants filed separate answers. The execution of the note and mortgages is admitted. The allegation that the plaintiff is the owner and holder of the note and mortgages is denied upon information and belief. The defendant Nicolas, in his answer as an affirmative defense, alleges that one Hills, on behalf of both defendants, tendered payment to the plaintiff prior to the institution of the action and renews that tender in his answer. The facts constituting the alleged tender of payment will be referred to later in this opinion. The amended answer of the Carbon County Bank also admits the execution of the note and mortgages, denies, upon information and belief, that the plaintiff is the owner and holder of the mortgages, and alleges as its first affirmative defense the same tender of payment and refusal as stated in the answer of its codefendant. As a second affirmative defense, it is alleged that, at the time of the indorsement and delivery to the plaintiff of the note set out in the complaint, the plaintiff sold to the defendant, as an exchange note, one certain promissory note for $11,000, signed by Pingree Bros, Inc., to which was attached certain collateral security. It is also alleged in the second affirmative defense that the note set up in plaintiff's complaint is a renewal note, and that the same was executed on May 4, 1921, payable in six months; that on the same date the note of $11,000, signed by Pingree Bros., Inc., was renewed for the same period under an agreement of repurchase by plaintiff on demand. In the third and fourth affirmative defenses, and also in the first and second counterclaims, the allegations are repeated that the note sued upon was an exchange note, delivered to the plaintiff bank by the defendant Carbon County Bank, that the Carbon County Bank had the right to repurchase the same at any time it saw fit, and that the plaintiff bank had the right under the agreement of exchange and repurchase to charge the amount of the note against the account of the Carbon County

Bank at any time it was desired, and to thereupon return the note to the defendant bank.

The issues were tried before the court without a jury. Judgment was entered in favor of plaintiff for the full amount due upon the note. A decree of foreclosure was entered, with provisions for a deficiency judgment. From that judgment this appeal is prosecuted.

The assignment of errors assails the findings of the court. This is an equitable action. It is therefore the duty of this court to determine the weight of the evidence wherein it is contended that the evidence does not support the trial court's findings.

For an intelligent understanding of the various transactions of these parties, it is necessary to state somewhat in detail the business relationship of the parties to this action. The National City Bank, plaintiff, had been conducting a banking business in Salt Lake City for a number of years prior to June, 1919. The Carbon County Bank was organized and opened its doors for business in the month of June, 1919. One Edwin Butterworth, the cashier of the Carbon County Bank, had, for six years prior to that time, been an employé of the National City Bank of Salt Lake City. For some months prior to the organization of the defendant bank he had worked in the National City Bank, while Frank Pingree was cashier of that bank. Through this cashier contracts and arrangements were made out of which this controversy grew. The Carbon County Bank being a new institution, it naturally did not have customers to whom it could loan its money. It is established beyond controversy that it was the desire of the officers of that bank and to its interests that the money paid into the bank by the incorporators be so invested as to earn interest as rapidly and expeditiously as could be done with safety. Accordingly an agreement was had with the National City Bank that that bank should furnish to the Carbon County Bank safe and desirable commercial paper, with the understanding and privilege on the part of the Carbon County Bank to return the securities and charge the amounts of the same to the National

City Bank when its interests required. In other words, an agreement was had by which there would be an exchange of paper between the two banks, with the right of repurchase, and with the privilege of charging back against the forwarding bank at any time that the interests or necessities of the bank holding the commercial paper should determine.

That arrangement is not only established by the oral testimony but by the correspondence found in the record. The National City Bank, under date of June 7, 1919, in a letter addressed to Mr. Edward Butterworth, cashier of the Carbon County Bank, said:

"We will arrange, if possible, to send you some good notes, that you may return to us at your convenience, the fore part of next week."

Under date of June 12, 1919,.in a letter addressed to the cashier of the Carbon County Bank, was written:

"We inclose herewith three notes totaling $17,721.56, which amount has been charged to your account today. * * * You may, at your convenience, return them to us for your credit if satisfactory to you. If you desire some additional notes in excess of this, we shall be glad to make some good selections for you and have the notes net you at least six per cent."

Again, on December 13, 1919, the National City Bank wrote to the Carbon County Bank as follows:

"As per conversation with Mr. Edwin Butterworth, we are inclosing herewith two notes executed by Jabez Ritchie of Idaho Falls, Idaho, amounting to $13,418.79, running for six months. We are charging your account with this amount and kindly ask that you credit our account with you. If at any time you are in need of these funds, you may charge our account and return the notes to us."

Again, on January 8, 1920, in a letter written to the Carbon County Bank and in which was inclosed an additional note, the letter concluded:

"You may debit our account and return this note to us on the maturity date or at any time you may be in need of the funds."

Apparently this friendly relationship between the banks continued during 1919, 1920, and at least a part of 1921. Frank Pingree, cashier of the National City Bank during all of this time, was likewise treasurer of Pingree Bros., Inc., a

corporation doing business in Salt Lake City. On September 25, 1920, Mr. Pingree, as cashier of the National City Bank wrote the Carbon County Bank as follows:

"As per conversation with your Mr. Edw. Butterworth this a. m., we are inclosing herewith $11,000 note of Pingree Bros., Inc., dated September 27th, and maturing March 28, 1921, secured with eighty shares of National City Bank stock, and have charged your account with the amount as per advice inclosed. Kindly acknowledge receipt and credit our account with you, and oblige."

The debt evidenced by the note sued upon was apparently contracted November 4, 1920, and a note and mortgage executed to secure the payment of the same to the Carbon County Bank. This note and mortgage were indorsed and assigned to the plaintiff bank on January following. It was a six months' paper and fell due on May 4, 1921. The note sued on was given in renewal of that note. The note of Pingree Bros., Inc., mentioned in the letter of September 25th, quoted, was also renewed and was to run contemporaneously with the Nicolas note as renewed. That definitely appears from the correspondence found in the record. On December 1, 1920, the Carbon County Bank, in a letter addressed to Mr. Frank Pingree, cashier of the National City Bank, stated that the Carbon County Bank had not received the Nicolas note of $15,000 and interest which would mature November 29th. It is also stated in that letter that "as an offset to this item we are returning to you herewith the note of Pingree Bros., Inc., for $11,000" with the securities. On December 10, 1920, Frank Pingree, as cashier of the National City Bank, in a letter addressed to the cashier of the Carbon County Bank, stated:

"I have not as yet credited the $11,000 note to your account which you returned some days ago, as I have previously explained to you that the note reinstated here would be an excess for us and would like, if you can see your way clear, to have you continue to carry this item for us in exchange for notes of similar amount which you are at liberty to send to us."

Again, on January 3, 1921, Mr. Pingree, as cashier of the National City Bank, wrote the Carbon County Bank as follows:

"I return to you, inclosed herewith, Pingree Bros., Inc., note of $11,000, which it will be necessary for you to continue to carry temporarily as I have not yet been successful in placing the account elsewhere, for reasons which I have previously explained to you."

On January 12, 1921, the Carbon County Bank addressed a letter to the National City Bank in which it is stated:

"As per telephone conversation am sending you herewith note of Auguste Nicolas in the sum of $15,000, together with two chattel mortgages. * * * You may charge this note back to our account of March 27, 1921; the date of the expiration of the note of Pingree Bros. which we are carrying for you, or at any time that you may be successful in replacing the same."

Subsequent to that date repeated efforts were made on the part of the Carbon County Bank to get the consent of the National City Bank to repurchase the Pingree Bros.' note, but without avail. After maturity of the Nicolas note and before the institution of this action the Carbon County Bank, through its agent, tendered in payment of that note the $11,000 Pingree Bros.' note, the amount of interest on the Nicolas note and a draft to cover the difference between the amount of the $11,000 and the amount of the Nicolas note, which was refused.

The $11,000 note executed by Frank Pingree as treasurer of the Pingree Bros., Inc., is payable direct to the Carbon County Bank and does not have the indorsement of the National City Bank. There is a conflict in the testimony as to whether the original note of which the note set up in the counterclaims and the affirmative defenses is a renewal note was payable to the National City Bank or not. The note first obtained and which was sent to the Carbon County Bank under date of September 25, 1920, had been prior to that time held by a bank in Idaho. That bank had demanded its payment, and the note was sent to the National City Bank and was there handled by its cashier, Frank Pingree.

The defense of both Nicolas and the Carbon County Bank is based upon the alleged agreement that the National City Bank was under obligation to repurchase this $11,000 note at such time as the Carbon County Bank found it to its interest to charge the amount of the note against the account

of the National City Bank. In other words, that the agree-
ment under which the note was taken by the Carbon County
Bank was that the National City Bank would repurchase the
note at any time upon demand.

The trial court's seventh and eighth findings are as follows:

"That on September 27, 1920, Pingree Bros., Inc., made, executed,
and delivered to Carbon County Bank their promissory note in the
sum of $11,000, payable six months from date, bearing interest at
the rate of 8 per cent. per annum, payable quarterly, and to secure
the payment of said note deposited as collateral, certificates Nos. 182
and 207 for 80 shares of National City Bank stock, also 270 shares
of Guardian Fire Insurance Company stock, also check No. 2707,
dated May 15, 1914, payab'e to the order of Hyrum Pingree, vice
president, signed by James Pingree Company, and drawn on Pin-
gree National Bank of Ogden, Utah; that said note for $11,000 was
renewed on May 4, 1921, for six months and was secured by the
same collateral security and that said note of September 27, 1920,
and said note of May 4, 1921, were neither of them property of
the said National City Bank, and were not sold by the said National
City Bank to Carbon County Bank with an agreement to repurchase
upon demand or at all; that said National City Bank did not re-
ceive the benefits from the sale of said note made by Pingree
Bros., Inc., to said Carbon County Bank; that National City Bank
did not guarantee said promissory note dated May 4, 1921, for
$11,000; and that the same was not exchange paper and that the
National City Bank did not agree to repurchase the same."

"That National City Bank did not request Carbon County Bank
to return said check No. 2707 and did not promise or agree to
substitute therefor additional security, and such agreement, if any,
was between said Carbon County Bank and Frank Pingree, treasurer
of Pingree Bros., Inc."

The assignment assails that part of finding No. 7 beginning
with the words, "that said note of September 27, 1920, and
said note of May 4, 1921, were neither of them property of
the said National City Bank," and continuing on to the end
of that finding, the claim being that they are not supported
by the weight of the evidence, and that they are contrary to
the undisputed evidence.

It is insisted by counsel for plaintiff that, it being conceded
that the note is past due, and that a suit to foreclose the mort-
gages is equitable in its nature, the defense interposed in the
affirmative defense and counterclaims is entirely severable

from plaintiff's cause of action and is legal in its nature; that the question presented to this court by the appeal is clearly a finding upon legal issues, and that, the trial court having made findings upon these issues, this court will not examine the evidence to determine its weight on such issues. Under the Constitution and Code of this state courts can administer both law and equity in one action. This contention of counsel for plaintiff seems to have been determined adversely to plaintiff by this court, in *Escamilla* v. *Pingree*, 44 Utah, 421, 141 Pac. 103, L. R. A. 1915B, 475. That was an action to foreclose a real estate mortgage. There was no dispute in that case as to the mortgage. The controversy was between the plaintiff and the defendant as administrator respecting the ownership of the note. The court considered the matter of ownership as being a part and parcel of the equitable proceeding, and proceeded to weigh the evidence on the theory that the questions at issue were involved in and a part of the equitable action.

Moreover, the plaintiff's ownership of the note and mortgages and the right to maintain this action is put in issue by the pleadings. It is alleged as a defense that a tender was made by the defendant Carbon County Bank for the repurchase of the note and mortgages prior to the institution of this action. That such tender was made is admitted by the reply of the plaintiff. The tender was made again during trial, and no objection was made to the tender as made. If that tender was sufficient, then the plaintiff was not the owner of this note, and these mortgages, and was not entitled to maintain this action. In determining that question the court of necessity must weigh the evidence to determine whether the plaintiff at any time had any right to institute or maintain the action or was in fact the owner of the note and mortgages.

The contention of the defendants is that the findings quoted are not only contrary to the great weight of the evidence, but are without any substantial support in the evidence. In entering upon a consideration to determine the weight of the evidence, we are not unmindful of the rule repeatedly

announced and recently affirmed by this court that findings based upon conflicting testimony in an equity case will not be disturbed unless it appears that the court has misapplied proven facts or that the findings are clearly against the weight of the evidence. *Olivero* v. *Eleganti*, 61 Utah, 475, 214 Pac. 313. That there existed an agreement between the defendant bank and the plaintiff for an exchange with the right and duty of repurchase of commercial paper  4 as indicated by the correspondence cannot well be doubted. In addition to the correspondence the cashier of the defendant bank testified positively to such an agreement. The conduct and transactions of the parties establish beyond any controversy that such an arrangement existed and was carried into effect. While conceding that that agreement or understanding existed between the banks, counsel for plaintiff insist that the arrangement respecting the note of Pingree Bros., Inc., was never included in and was no part of that agreement. It is further insisted that the Pingree note was never the property of the plaintiff bank, and that it is not shown that the plaintiff bank ever received any consideration for any guaranty or agreement to purchase or repurchase that note from the defendant bank. It is also insisted and argued that if the cashier of the plaintiff bank made any agreement to purchase or repurchase this particular note it was beyond his authority, in the absence of any showing that special authority was given him by the officers of the bank to make such an agreement. It is insisted that it affirmatively appears from the face of the Pingree note that Frank Pingree, cashier of the National City Bank, was likewise treasurer of the Pingree Bros., Inc., and therefore had a personal interest in the making of that note. Numerous authorities are cited which are to the effect that an officer of a bank has no authority to bind the funds of the bank to pay his individual or personal obligations or obligations in which he is personally interested. Among the cases cited are the following: *Heir* v. *Miller*, 68 Kan. 258, 75 Pac. 77, 63 L. R. A. 952; *Cobe* v. *Coughlin Hd'we Co.*, 83 Kan. 522, 112 Pac. 115, 31 L. R. A. (N. S.) 1126; *Bowen* v. *Needles Nat. Bank*, 94 Fed. 925, 36 C. C. A.

553; *Byron* v. *First Nat. Bank*, 75 Or. 296, 146 Pac. 516; *Commercial Nat. Bank* v. *First Nat. Bank*, 97 Tex. 536, 80 S. W. 601, 104 Am. St. Rep. 879; *Farmers' & Merchants' Nat. Bank* v. *Smith*, 77 Fed. 129, 23 C. C. A. 80; *First Nat. Bank* v. *Drovers' Nat. Bank*, 244 Fed. 135, 156 C. C. A. 563; *German Sav. Bank* v. *Des Moines Nat. Bank*, 122 Iowa, 737, 98 N. W. 606; *Pelton* v. *Spider Lake Co.*, 132 Wis. 219, 112 N. W. 29, 122 Am. St. Rep. 963; *Bank of Le Roy* v. *Purdy*, 100 App. Div. 64, 91 N. Y. Supp. 310. If these authorities are applicable to the facts here they are conclusive of the rights of the parties.

This case, like all other cases, must be controlled by the particular facts and circumstances surrounding it. All communications of the National City Bank were upon the stationery of that bank. The letters are signed by Frank Pingree, cashier. There is nothing in the record to indicate or to suggest that the defendant bank understood or had reason to understand from this correspondence that Pingree was not acting for and on behalf of the plaintiff bank, unless it be that the note was not made payable to that bank. The correspondence quoted and the acts of the officers of the defendant bank definitely show that they understood they were dealing with the plaintiff bank and not with Pingree Bros., Inc. This note was forwarded to the Carbon County Bank on September 25, 1920. In January following the Carbon County Bank indorsed and delivered to the plaintiff bank the Nicolas note upon which this action is founded. All of the dealings between the parties subsequent to that date indicate that the officials of the Carbon County Bank intended to offset that note against the claim of the plaintiff for the Nicolas note, or, to express it in the language of the witnesses, one note would "wash" the other. The acts and conduct of the Carbon County Bank conformed to that understanding, and were efforts to carry out that understanding and agreement until the plaintiff bank finally refused to give the defendant bank credit for the amount of this note.

The defendant bank, in its letter of December 1, 1920, said, "As an offset to this item we are returning to you herewith

the note of Pingree Bros., Inc., for $11,000,'' referring to some claim of the plaintiff bank. The plaintiff recognized its obligation in its letter of December 20, 1920, in which the defendant bank was advised that the $11,000 note had not yet been credited, stating the reason therefor. In that letter it was stated that to reinstate the $11,000 note would be an excess loan, and the Carbon County Bank was requested if it could see its way clear to continue to carry that note "for us in exchange for notes of similar amount which you are at liberty to send us.'' This language is susceptible of but one construction, namely, that the cashier of the plaintiff bank intended to convey to the officers of the defendant bank that he recognized that it was the duty of the plaintiff to repurchase this note from the defendant, and that the dealings respecting this particular note were included in and part of the general agreement for discounting notes, with the mutual duty and privilege of repurchasing on the part of each bank. Again, in its letter of January 3, 1921, in returning the $11,000 note to the defendant bank that bank was requested to carry it temporarily and as a reason for that request the cashier of plaintiff bank stated he had not been successful in placing the amount elsewhere. True it is, the note of Pingree Bros. was made payable direct to the Carbon County Bank and did not have the indorsement of the plaintiff bank. The reason for that, however, is explained by the witness Butterworth as well as by the correspondence of the cashier of the plaintiff bank, namely, that the taking of that loan by the plaintiff bank would be what they designate as an excess loan to Pingree Bros. It is also explained in the testimony that if the note was made payable to the National City Bank and by it indorsed to the Carbon County Bank this would constitute a loan of the National City Bank and would show upon the books of the plaintiff bank as a loan in excess of what that bank was permitted to make to Pingree Bros.

It is the duty of the court, in the interest of justice, to ascertain the real intent of the parties and, if the carrying out of that intent is not prohibited by law, to determine the right of the parties based upon such intent. In other words,

the court will disregard form and look to the substance and the equities and rights of the parties. The taking of this note by the Carbon County Bank was not an isolated transaction; nor was it a separate, distinct, and independent matter from the other relationship existing between the banks. It is in line with the policy that had its beginning shortly after the organization of the defendant bank. Nothing was suggested or indicated in the communication of September 25th, or in the testimony elsewhere in the record, that any intimation or statement was made or given to the officers of the defendant bank that in discounting the Pingree note it did not fall within the general understanding or agreement existing between the banks respecting the exchange or discounting of commercial paper, nor that the agreement on the part of the plaintiff bank to repurchase paper which it had discounted with the defendant bank did not include this particular transaction. If we are right in concluding that the testimony overwhelmingly supports a finding contrary to that made by the court, and to the effect that the plaintiff bank agreed to repurchase this particular note, then the statute of frauds is not applicable, because in so repurchasing the bank would only be carrying out the original agreement made by it, without regard to any third party's **5, 6** interest. *Trenholm* v. *Kloepper*, 88 Neb. 236, 129 N. W. 436. Rediscounting commercial paper between banks is part of the usual course of business, and, as appears by the testimony and the acts of the banks involved in this controversy it was the usual course of business conducted in this particular locality. *Auten* v. *United States Nat. Bank*, 174 U. S. 125, 19 Sup. Ct. 628, 43 L. Ed. 920.

Conceding that it is established by the great weight of authority that the cashier or other officer of the bank does not have, as part of the ordinary duties or powers in conducting the business of the bank, the right to subject funds of the bank to secure his personal liability, or a liability **7** in which he has personal interest, or in which the bank does not receive benefit, without the special authority of the officers of the bank, nevertheless the officers of the bank,

as well as officers of other corporations, ought not to be heard to plead want of authority to the injustice of another, and especially if, through a long period of time, such officers have acquiesced in permitting such authority to be exercised by one of the bank's officers.

We have attempted to point out wherein the testimony without much controversy establishes that the defendant bank, acting in good faith, believed and relied implicitly upon the agreement that the plaintiff bank would repurchase this paper or would permit it to be used as an offset against its demand, growing out of the taking over of the note and mortgages set out in the complaint. The officers of that bank continued in that faith, and were led to continue and rely upon such understanding or agreement by the subsequent correspondence and arrangement respecting this loan, as well as the loan sued upon. The Missouri Court of Appeals, in *St. Charles Sav. Bank* v. *Orthwein Inv. Co.*, 160 Mo. App. 369, 140 S. W. at page 923, states the principle which we think should control the rights of the parties in this case:

"The test in this case is whether in equity and good conscience, in view of the special facts of the case, defendant was entitled to retain the money as against the plaintiff."

It would be, in our judgment, most inequitable to deny to the defendant bank the right to offset this $11,000 note against any claim which the plaintiff might have, growing out of its claimed ownership of the note and mortgages in question, under the particular facts and circumstances as appear in this record. The officers of the plaintiff bank must be presumed to have had knowledge of the arrangement made for discounting and repurchasing commercial paper between the plaintiff bank and the defendant bank. The length of time that arrangement continued is conclusive both as to the knowledge of the directors of plaintiff bank and their acquiescence therein. The correspondence respecting this particular $11,000 note was signed by Frank Pingree, cashier, as was all the correspondence respecting other transactions. In addition, in the letter of December 1, 1920, the defendant bank, in returning the note, advised that it should be used as an offset against the note

upon which this suit is founded. The cashier of the plaintiff, in returning the note, in a letter of December 20, 1920, said nothing to disabuse the minds of the officers of defendant bank of the idea that plaintiff bank was under obligations to repurchase this note; on the contrary that letter, in effect, said, "We will carry a note of like amount for you."

Mr. Pingree was the cashier of the plaintiff bank. Whatever authority he had was received from the affirmative acts of the directors in making him cashier. There is no doubt, nor can there be, that the defendant bank relied upon the general agreement to repurchase by the plaintiff in accepting this $11,000 note. The tender made was sufficient if the $11,000 note can be used as an offset against the demand of plaintiff. If that tender was sufficient to satisfy the demands of plaintiff, it was then its duty to return the note sued upon to the Carbon County Bank, together with any security received by it. As stated above, there is no dispute that a sufficient tender was made if the $11,000 note could be used as an offset to the demands of the plaintiff, and it was its duty to return the note sued upon to the Carbon County Bank with any securities received by it.

The court's eighth finding is also assailed as not being supported by the evidence and as contrary to the evidence. The view we take of this case renders that finding immaterial. Nevertheless, if it is important, we should be compelled to hold that the finding is not only not supported by the testimony, but it is clearly in the face of the uncontradicted testimony, both written and oral. The following authorities lend some support to the conclusions reached. *Arnold* v. *Nat. Bank,* 126 Wis. 362, 105 N. W. 828, 3 L. R. A. (N. S.) 580; *Claim & Adjustment Ass'n* v. *N. W. Loan & Trust Co.,* 81 Wash. 247, 142 Pac. 670, L. R. A. 1917A, 737, Ann. Cas. 1916D, 551.

The judgment is reversed, and the cause remanded to the district court of Carbon county, with directions to that court to modify its findings of fact, conclusions of law, and judgment to conform to the views herein expressed. Upon the filing of the remittitur the defendant should be permitted to renew the tender made, and, if that is done, then the order

should be made directing the receiver to turn over to the Carbon County Bank the note and securities sued upon and accept the tender. Costs are allowed appellant.

THURMAN, FRICK, and CHERRY, JJ., and BARNES, District Judge, concur.

WEBER, C. J., did not participate herein.