**STATE BANK OF LEHI, a Utah Corporation, Plaintiff and Respondent,**

v.

**Ralph O. WOOLSEY and Sylvia W. Woolsey, Defendants and Appellants.**

No. 14719.

Supreme Court of Utah.

June 7, 1977.

Heber Grant Ivins, American Fork, for plaintiff and respondent.

S. Rex Lewis, of Howard, Lewis & Petersen, Provo, for defendants and appellants.

MAUGHAN, Justice:

Before us is a judgment allowing foreclosure. Plaintiff held, and the action was grounded on, a security interest in realty, and personalty pledged by defendants. We affirm. Costs to plaintiffs.

Defendants operated a mink ranch and became indebted to plaintiff in the sum of $161,000. The debt was evidenced by three promissory notes, and certain security agreements.

On January 2, 1976, plaintiff filed this action, in keeping with an appropriate acceleration clause. It alleged the three notes were delinquent and sought foreclosure of its security interest, in both the real and personal property. Plaintiff further sought the appointment of a receiver to protect and care for the mink. The petition was granted.

On appeal defendants contend the trial court erred in striking their timely demand for a jury trial. The court ruled the issues to be decided were largely equitable and arose from an interpretation of written contracts. Therefore, defendants were not entitled to a jury trial.

Defendants cite three factual issues, in particular, which they claim should have been submitted to the jury. First, whether the parties had made a binding oral agreement to extend the time of payment of the

$115,000 note to March 1, 1976. Second, whether there was any basis, in fact, for the grounds asserted by the bank to support its claim of insecurity under the acceleration clause in the security agreement. Third, whether the bank acted in good faith in exercising its option to accelerate.

Since the security agreement covered both real and personal property, and plaintiff elected to proceed as to both the real and personal property, plaintiff's rights and remedies are determined according to the law of foreclosure of interests in real estate and the provisions of Chapter 9, Title 70A do not apply.[1]

Defendants cite *Petty v. Clark*[2] and contend any issue concerning the underlying indebtedness, viz., the obligation in the note, is a legal issue which should be submitted to a jury. *Petty v. Clark* creates a certain degree of confusion, particularly, Justice Wolfe's concurring opinion, wherein he expressed the view that the majority's opinion had, in effect, although not expressly, overruled prior case law. He conceded that the prior cases in Utah had been definite and explicitly held that in a foreclosure suit on a note and mortgage the issue of indebtedness was not triable by a jury as a matter of right.[3]

In the recent case of *United States v. Loosley*[4] we said:

> . . . The main purpose of a mortgage is to insure the payment of the debt for which it stands as security; and foreclosure is allowed when necessary to carry out that objective. . . . The proceeding is one in equity in which principles of equity should be applied consistent with the above stated purpose; and neither the mortgage nor the foreclosure should be used as an instrument of oppression. . . .

■ In *Sweeny v. Happy Valley, Inc.*[5] this court observed that whether a cause should be regarded as one in equity or one in law, wherein the party can demand a jury as a matter of right, the ostensible form of the action or the particular wording of the pleadings is not determinative. The trial court in making its determination as to whether the legal or equitable issues predominate should examine the nature of the rights asserted and the remedies sought in light of the facts of the case.

■ What is the nature of the mortgagee's right in a foreclosure proceeding? In Utah, a mortgage conveys no legal estate to the mortgagee but gives the mortgagee a lien on the premises to secure payment of the indebtedness. A mortgage is not a conveyance of title; the mortgagor has the legal title. This concept is a complete reversal of the theory administered in England, wherein the estate of the mortgagor was equitable, and the jurisdiction of equity dealt chiefly with protecting his equitable rights. The mortgagee was vested with the legal estate, by means of the mortgage, and was able to obtain possession of the land by legal action and thus seldom resorted to a court of equity.

■ Today, the mortgagee calls on equity for his remedy. His interest is no longer an estate, but a mere lien, an appendage of the debt, incapable of being separated from the debt, and transferred by itself. The mortgagee has no legal remedy on the mortgage, no power to recover possession of the land, and can enforce the lien against the land in no legal action. The remedy granted by a court of equity is based upon the theory that his interest is a mere equitable lien and not an estate. The relief granted is the enforcement of the lien, by sale of the premises, and an application of the proceeds upon the debt.

■ The mortgagor's estate is, in effect transferred to the purchaser at the

1. 70A–9–501(4), U.C.A.1953.

2. 102 Utah 186, 129 P.2d 568 (1942).

3. See *Escamilla v. Pingree,* 44 Utah 421, 141 P. 103 (1914); *Consolidated Wagon & Machinery v. Kay,* 81 Utah 595, 21 P.2d 836 (1933).

4. Utah, 551 P.2d 506, 508 (1976).

5. 18 Utah 2d 113, 117, 417 P.2d 126 (1966).

judicial sale. A legal estate is taken from the mortgagor and transferred to the purchaser. The mortgagee may buy the land at the sale and thus acquire the title, but he acquires it as a purchaser, and not as mortgagee. The mortgagor retains the full legal estate, subject only to the encumbrance, and is entitled to the possession, use, rents, and profits up to the time when his title is finally divested by a judicial sale in a proceeding to enforce the lien. The mortgagor is able to secure his estate and possession by legal action, and has no need or occasion to invoke the aid of equity.[6] His rights are all legal, in contrast to those of the mortgagee which are all equitable. This does not, of course, deny to the mortgagor access to appropriate equitable defenses.

■ Thus, the right asserted by the mortgagee, in a foreclosure proceeding, is equitable. This equitable right does not exist separate or independent of the underlying obligation.

In a suit to foreclose a mortgage the court will ordinarily treat the case as a unity, and as one of exclusive equitable jurisdiction. It is settled, therefore, that the chancellor may determine the issue of indebtedness as one lying across the very threshold of his jurisdiction to decree a foreclosure. And suits to enforce or foreclose liens are frequently retained for money judgments.[7]

The foregoing point is illustrated in *Moore v. Capital Gas Corporation,*[8] wherein the mortgagor asserted on appeal it should have been accorded a jury trial on the debt issue. The court said that in order to determine if a mortgagee is entitled to the relief sought, it is absolutely necessary to determine there is a debt secured by a mortgage. For if there be no debt, there is nothing upon which the power of the court could be exercised. It is impossible to make a step of progress towards a decree, without settling the question of the mortgagor's indebtedness.

The court observed there were cases which appeared to hold as the mortgagor contended, but they seemed to be based partially upon a confusion between an exclusive equity jurisdiction and concurrent equity jurisdiction. It cited as an example, a case where the plaintiff sought two unrelated remedies, viz., damages, a legal remedy; and an injunction, an equitable remedy. In such a case, the equity court had concurrent jurisdiction over the demand for an award of damages, which, however, was not a prerequisite to the granting of an injunction. In contrast, in a foreclosure proceeding, the mortgagee's right to a money judgment is not a separate matter but a prerequisite to the equitable relief demanded.[9]

■ Thus, the trial court did not err in ruling defendants were not entitled to a jury trial.

Defendants further contend the trial court erred in failing to find the parties had orally agreed to extend the due date of the $115,000 note to March 1, 1976. Defendants urge the evidence clearly indicates the existence of such an extension agreement.

■ The evidence indicates plaintiff did make a representation it would carry the note until defendants could effect refinancing of their obligation. However, in return for this promise of forbearance defendants did not make any promise, e. g., defendants did not promise to pay interest until March 1, 1976, whether the debt was paid or not. Such a promise on the part of defendants may not be implied under the circumstances, for the extension was not for a definite time, but until refinancing could be obtained.

When a debtor and creditor agree that an interest bearing debt shall be extended for a fixed time, the promise of each is of something detrimental, as the creditor

---

**6.** 4 Pomeroy's Equity Jurisprudence (5th Ed.) § 1190, pp. 563–564.

**7.** 1 Pomeroy's Equity Jurisprudence (5th Ed.) § 240, p. 450.

**8.** 117 Mont. 148, 158 P.2d 302 (1945).

**9.** See *Young v. Vail,* 29 N.M. 324, 222 P. 912, 34 A.L.R. 980 (1924); 10 Thompson On Real Property (1957 Replacement) § 5140, p. 50.

promises to forbear the collection of his claim and the debtor gives up his power to stop the accrual of further interest by the payment of the principal at maturity. Accordingly such agreements are generally upheld. The promise to pay interest on such an obligation need not be expressed, as it will be implied from the transaction itself. If, however, the debtor neither promises to refrain from paying the debt until a fixed day in the future, nor to pay interest until that time whether the debt is paid or not, there is no consideration to support the creditor's promise to extend the time of payment.[10]

Defendants further urge the trial court erred in its findings that plaintiff had properly accelerated the payments due under the notes, also in that defendants had not sustained their burden of establishing a lack of good faith, in plaintiff's declaration of a default, under the security agreement.

The security agreement provided the debtor would be in default if any of several events occurred. Included were the debtor's failure to pay any of the obligations when due; the debtor's failure to perform any undertaking in the agreement or in any of the obligations; the debtor becoming insolvent or unable to pay debts as they mature; any collateral is lost, stolen or materially damaged; or the bank should deem itself insecure for any reason whatsoever. One of defendants' obligations under the security agreement was to care for and maintain the mink in a husbandlike manner.

The court found that at the time plaintiff filed its action on January 2, 1976, defendants were insolvent and unable to pay their debts as they matured, and they owed numerous obligations. On one occasion, defendant, Mr. Woolsey had threatened to file bankruptcy.

At the time the action was filed, defendants had drawn all of the money representing the notes and had overdrawn their account in the sum of $330. Defendants had failed to care properly for the livestock pledged as collateral. The court further found that on December 11, 1975, defendants claimed that 981 mink pelts had been stolen. These were valued at $25,000, and were part of the collateral covered by the security agreement.

The court concluded as a matter of law that plaintiff had exercised good faith in accelerating payment, and that all the notes were in default and due and payable in full. Further pursuant to section 70A–1–208, U.C.A.1953, defendants had not sustained their burden of proving lack of good faith on the part of plaintiff in declaring the obligation in default and in accelerating payment of the notes for $45,000 and $6,000.

■ It should be observed that since a suit to foreclose a mortgage is an equitable action, the chancellor has the right to deny foreclosure based upon an acceleration where there are substantial equities which would render the acceleration unconscionable.[11]

Section 70A–1–208, U.C.A.1953, provides:

A term providing that one party or his successor in interest may accelerate payment or performance or require collateral or additional collateral 'at will' or 'when he deems himself insecure' or in words of similar import shall be construed to mean that he shall have power to do so only if he in good faith believes that the prospect of payment or performance is impaired. The burden of establishing lack of good faith is on the party against whom the power has been exercised.

■ The findings of the court are sustained by the record.

In *Williamson v. Wanless*[12] this court observed that the good faith requirement of Sec. 70A–1–208 is in harmony with the

10. 1 Williston On Contracts (3rd Ed.) § 122, pp. 512–514; also see *Hackin v. First National Bank of Arizona,* 1ᴏ1 Ariz. 350, 419 P.2d 529 (1966).

11. *Arizona Coffee Shops, Inc. v. Phoenix Downtown Parking Assoc., Inc.,* 95 Ariz. 98, 387 P.2d 801 (1963); *Murphy v. Fox,* Okl., 278 P.2d 820 (1955).

12. Utah, 545 P.2d 1145 (1976).

principles of equity, viz., that acceleration is a harsh remedy which should be allowed only if there be some reasonable justification for doing so, such as the good faith belief that the prospect of payment is impaired.

Section 70A–1–201(19), U.C.A.1953, defines "good faith" as "honesty in fact in the conduct or transaction concerned." In *Farmers Co-Op Elevator, Inc., Duncombe v. State Bank*[13] the issue was whether the bank was in good faith in its belief it was insecure. Defendant there urged the good faith requirement of Sec. 70A–1–208 required not only honesty in fact, but also a reasonable belief in impairment of the prospect of payment. The court held the test of good faith under that section was a wholly subjective one of honesty. It sustained the action of the trial court on the ground defendant had not adduced substantial proof the bank's concern about the security of its loans, whether or not reasonable, was not genuine, or that the bank had an ulterior motive.[14]

A review of the record in the instant matter reveals substantial evidence indicating plaintiff had a genuine belief its prospect for payment was impaired.

■ Finally, defendants contend the court erred in its ruling concerning Mrs. Woolsey's claim that plaintiff agreed, prior to her execution of the assignment of her home, it would be released as security after the kit crop was sold in February, 1975. The court admitted evidence concerning this, oral agreement. However, it found the written documents introduced in evidence constituted the full and complete agreement of the parties.

The court concluded as a matter of law the integrated agreement between the parties could not be altered or amended by parol evidence. Such evidence as was admitted pertaining to such alteration was properly stricken.

Defendants characterize their evidence as indicating fraud in the inducement for execution of the security agreement. They urge that parol evidence is always admissible to show fraud, even though it has the effect of varying the terms of a written agreement. The error claimed is the trial court was required to consider the parol evidence and make a finding on the issue of fraud.

A review of the record and pleadings indicates defendants did not seek reformation of the agreement to reflect the terms upon which the parties had allegedly agreed and which through the fraud of plaintiff were not included in the written agreement.[15] Defendants merely sought enforcement of their prior oral agreement.

■ The court properly adhered to the principle that when the parties have reduced to writing what appears to be a complete and certain agreement, it will be conclusively presumed, in the absence of fraud, that the writing contains the whole of the agreement between the parties. Also, that parol evidence of contemporaneous conversations, representations or statements will not be received for the purpose of varying or adding to the terms of the written agreement.[16]

ELLETT, C. J., and WILKINS and HALL, JJ., concur.

CROCKETT, Justice (concurring in result):

I agree with the result of the main opinion in affirming the judgment. But I except therefrom statements concerning matters which I am unable to see the necessity of setting forth in this decision. See Manual on Appellate Court Opinions, Witkin, p.

**13.** Iowa, 236 N.W.2d 674 (1975).

**14.** See *Van Horn v. Van De Whol, Inc.*, 6 Wash. App. 959, 497 P.2d 252, 61 A.L.R.3d 241 (1972); 61 A.L.R.3d 244, Anno.: What constitutes "good faith" under Uniform Commercial Code § 1–208 dealing with "insecure" or "at will" acceleration clauses.

**15.** *Mawhinney v. Jensen*, 120 Utah 142, 232 P.2d 769 (1951).

**16.** *Bullfrog Marina, Inc. v. Lentz*, 28 Utah 2d 261, 266, 501 P.2d 266 (1972).

236. I regret to further extend the matter, but think it should be borne in mind that Sec. 19 or Art. VIII of our Constitution, provides that:

There shall be but one form of civil action, and law and equity may be administered in the same action.

Numerous of our cases have dealt with this subject, the general import of which is that the technical distinctions between law and equity are largely abolished, except to follow that mandate of our Constitution and to give the parties the relief to which they are entitled (see Rules 1 and 54(c), U.R.C.P.) as the interests of justice require whether in law or equity, or a combination thereof. (See e. g. *Valley Mortuary v. Fairbanks, Utah,* 119 Utah 204, 225 P.2d 739).