## WORLEY et al. v. PETERSON et al.

No. 5045.   Decided July 31, 1931.   (12 P. [2d] 579.)

28

*Leslie Frazer*, of Salt Lake City, for appellants.

*Leon Fonnesbeck*, of Logan, and *William E. Davis*, of Brigham City, for respondents.

STRAUP, J.

Henry Worley and W. H. Stewart, as administrators of the estate of John Worley, deceased, brought this action against Anthone L. Peterson, Elizabeth Ann Peterson, his wife, Charles Peterson, Maria Peterson, his wife, the Cardon Company, a corporation, and William E. Davis, administrator of the estate of Veurlam Dives, deceased, to quiet title to 320 acres of farming lands in Box Elder county. In the complaint it, among other things, is alleged that John Worley died in 1907 and left surviving him as his heirs Henry, John, and George Worley, his sons, and Ann Smith, Mary C. Tarbett, Maria Peterson, and Kate Leishman, his daughters; that Henry Worley in 1909 was appointed and ever since acted as administrator of the estate; and that on April 8, 1929, Stewart was appointed and ever since acted as co-administrator.

It is further alleged that at the time of his death John Worley was the owner and in possession of the real estate fully described in the complaint; that on March 7, 1910, pursuant to his petition filed in the district court, Henry Worley as the then sole administrator of the estate was authorized to mortgage the real estate for the sum of $1,200 and that in pursuance thereof Henry Worley as the

administrator on June 15, 1910, executed a mortgage on the real estate for the sum of $1,200 payable to the Cardon Company two years after date, but that, as it is alleged, the administrator did not nor did the estate receive any money or other consideration for the mortgage which was recorded in the office of the county recorder of Box Elder county and at no time canceled or released and which constitutes a cloud on the title; that the mortgage was invalid; that the Cardon Company had no right, title, or interest therein, or any lien on the premises therein described; and that the plaintiffs were entitled to have the mortgage canceled of record and the cloud removed.

It is further alleged that the defendants claimed some right, title, or interest in the lands, but that the claim of each, if any they had, was junior and inferior to the right, title, and interest of the estate and of the plaintiffs, and that the defendants had no right, title or interest in or to the premises or any part thereof; that the defendants Peterson in 1911 conspired together to obtain possession of the lands from the administrator, Henry Worley, by falsely and fraudulently pretending to lease the premises from the administrator and offering to pay the taxes and a reasonable rental for the use and occupancy of the premises, whereby the administrator was induced to give and gave the Petersons possession of the premises, but who failed and neglected to pay the taxes or any rental and retained and applied all the rents and profits to their own use and benefit.

The plaintiffs thus prayed that the defendants be required to appear and set forth whatever right, title, or interest, if any they had, was claimed by them, and that such claims be adjudged invalid and groundless; that the plaintiff be given immediate possession of the premises and that they have judgment against the Petersons for the rental value thereof; and prayed for other and general and equitable relief.

The Petersons filed a general demurrer, and a special demurrer on the ground that the alleged action was barred

by the statute of limitations. These were overruled. They then filed a general denial, pleaded the statute of limitations, and interposed a counterclaim setting up title by adverse possession and alleging that they were in possession of the premises since 1911, and since then and until the commencement of the action had paid all taxes assessed against the lands and prayed that title be quieted in them.

The defendant Davis as administrator of the estate of Dives also filed a general denial and by way of counterclaim alleged that the Petersons ever since 1911 had occupied the premises and acquired title by adverse possession and had paid all taxes assessed against the premises, and further alleged that Dives advanced and loaned moneys to Anthone L. Peterson in the sum of $1,500 to settle the mortgage of $1,200 executed by the administrator Henry Worley, and that in 1914 Anthone L. Peterson and his wife executed and delivered to him their promissory note for $1,500 and to secure its payment gave him a mortgage on the real estate described in the complaint and claimed by the plaintiffs, together with other property, that the mortgage was recorded, and that in 1924 Anthone L. Peterson and his wife as a renewal of such mortgage executed another or new mortgage in the sum of $1,500 upon the same premises, which mortgage also was recorded, and that no part of such renewal note and mortgage had been paid; and that the administrator of Dives prior to the commencement of this action had commenced an action to foreclose the renewal note and mortgage, which action was pending and undisposed of when this action was commenced. He therefore prayed that his renewal mortgage of $1,500 be subrogated to all the rights and priorities of the $1,200 mortgage given by the administrator Henry Worley to the Cardon Company and that his renewal mortgage be declared a first and prior lien on the premises described in the complaint.

A reply was filed by the plaintiffs to both counterclaims. They also pleaded the statute of limitations to the counterclaim of the Dives estate. The defendant Cardon Company,

though personally served with summons in the action, failed to appear or answer or otherwise plead to the complaint.

The case was tried to the court. Among other things, the court found that John Worley at the time of his death in 1907 was the owner and in possession of the 320 acres, the lands described in the complaint, and "that it was admitted that the legal title thereto was in the heirs of John Worley deceased subject to the administration of his estate"; that Henry Worley as administrator of the estate of John Worely, in pursuance of an order of court in probate proceedings, on June 15, 1910, executed a mortgage on the real estate in the sum of $1,200 payable in two years to the Cardon Company as the mortgagee, which mortgage was recorded and still stood on the records in the county recorder's office unassigned and unreleased; and that the Cardon Company claimed no interest in the mortgage or in the premises by reason of the execution of the mortgage.

The court further found that Henry Worley was uneducated, had littled or no business erperience, and little or no understanding of his duties or responsibilities as an administrator, although he was not wholly incompetent to act as such; that Henry Worley realized his incapacity to manage the farm, take care of the interest of the estate, pay off the mortgage, and pay the taxes on the farm; that the defendants Anthone L. and Charles Peterson, who were related to Henry Worley by marriage, were more intelligent and as bondsmen signed the administrator's bond of Henry Worley at the time of and to secure his appointment as such administrator's bond of Henry Worley at the time of and to secure his appointment as such admisitrator; that a fiduciary relation of trust and confidence existed between Henry Worley and the Petersons, and that in 1911 Henry Worley, who had theretofore been in charge of the estate property, turned the active charge and possession of the real estate over to the Petersons, on the understanding that they pay the interest and take care of and pay off the mortgage and all taxes levied and assessed against the

property, and that under such understanding, and not otherwise, the Petersons in 1911 took possession and continued in possession of the premises until the commencement of this action; that they kept up the fences, cultivated the premises in the usual manner, and retained all the crops raised; that they moved a portion of the fence on the proper line, which inclosed the premises at the time the Petersons took possession, and erected a "small frame shack" on the premises worth about $50, but otherwise made no permanent improvements on the property.

The court further found that in March, 1914, Anthone L. Peterson and Elizabeth Ann Peterson made and executed a mortgage in the sum of $1,500 to Dives on 40 acres of lands with water rights belonging to them, and also on *all of the described real estate of the John Worley estate*— 320 acres—which mortgage was recorded, and that "$1,200 of the money received by said defendants on said Dives mortgage was used to pay off the $1,200 mortgage made by Henry Worley administrator to the Cardon Company"; that thereafter, in February, 1924, Anthone L. Peterson and Elizabeth Peterson renewed the $1,500 mortgage payable to Dives by giving a new or another mortgage for the same amount due in one year on the same real estate which also was recorded; that the principal and interest of the renewed mortgage was long past due and unpaid "as alleged by said William E. Davis, administrator, in his foreclosure proceedings and that $150 was a reasonable attorney's fee for the foreclosing of said mortgage."

The court also found that "the undisputed adduced evidence by the plaintiffs shows that the reasonably yearly rental value of said real estate belonging to the estate of John Worley deceased (the 320 acres) is $2.00 to $2.50 per acre, and the court finds that the reasonable rental value of said premises during the time the same has been in the possession of the Petersons has been *at least* $150 per year, which the court finds is *at least equal to the taxes*

*levied and assessed against said premises and the interest payable under said mortgage."*

The court further found that "the defendants" paid all of the taxes upon the real estate from and including 1911 to and including 1925, though in some years the taxes were not paid when due and delinquent, but that the property was redeemed by the Petersons after sale for nonpayment of taxes, and in some instances after the auditor's deed had been issued. The court, however, did not find the amount of taxes co paid. The court also found that the taxes levied against the property from and including 1926 to and including 1929 were delinquent and unpaid at the time of the trial.

The court further found that when the Petersons took possession of the premises, the legal title thereto was in the heirs of John Worley, deceased, subject to the possession and right of the administrator Henry Worley for the purpose of administration; in effect held that the possession of the Petersons was permissive and with the consent of the administrator and of the heirs, and that the Petersons did not enter possession under any claim of title or right of possession and that their possession was not adverse to the right, title, or interest of the administrator or of the heirs of the deceased, and that the Petersons at no time claimed or asserted any right, title, or ownership in or to the premises adverse to the right, title, or interest of the estate or of the heirs.

The court further found that because the Petersons were signers of the administrator's bond and because of the fiduciary and trust relation existing between them and Henry Worley the administrator, and of the understanding and consent upon which they secured and held possession of the premises, the defendants were estopped from asserting or setting up the statute of limitations or of asserting that they held the premises adversely to the administrator or the heirs.

As conclusions of law the court held that the property belonged to the estate of John Worley, deceased, that "the defendants" had not acquired any right, title, or interest in

or thereto by adverse possession or otherwise (except as to the defendant Maria Peterson who was an heir of the deceased), and that the plaintiffs as administrators were entitled to the immediate and exclusive possession of the premises for the purpose of completing the administration of the estate, "free from any interest or claim on the part of the defendants or any of them."

The court, as a conclusion of law, stated that $1,200 of the $1,500 mortgage given by the defendants Anthone L. and Elizabeth Peterson to Dives "was used to pay off the Worley estate mortgage as found in the findings of fact, on or about March 19, 1914," and amounted to and in effect was a continuation of the Worley estate mortgage; that Davis as the administrator of the estate of Dives was not precluded or barred by the statute of limitations or otherwise from asserting or claiming a mortgage lien against the premises of the Worley estate, "but is entitled to judgment against the said estate of John Worley deceased, *in his said foreclosure proceedings on the Veurlam Dives mortgage, in the sum of* $1,200.00, including a pro rata share of attorney's fees and court costs *allowed in his said foreclosure proceedings in which the total amount of attorney's fees is hereby fixed at* $150.00, *said judgment to be in the nature* of an approved claim against the said Worley estate." A decree was rendered and entered accordingly.

The Petersons prosecuted an appeal to this court from all portions of the judgment wherein the plaintiffs were adjudged and awarded title to and possession of the premises and the appealing defendants adjudged to have no right, title, or interest in or to the premises, and from each and every part of the judgment which purports to affect the title to or right of possession of the real property as between the plaintiffs and appealing defendants. The notice of appeal was served on the plaintiffs and on all of the defendants, including the administrator of the Dives estate.

The assingments of error are numerous, embracing 34 separate assignments. They involve the rulings of the

court overruling the demurrers and motion for nonsuit; the court's finding on the statute of limitations; the findings as to a fiduciary relation existing between the Petersons and Henry Worley; the finding that Henry Worley was uneducated, had little or no business experience, and little or no understanding of his duties or responsibilities as administrator and the circumstances under which the Petersons were let into possession and occupied the premises; the findings and conclusions of the court that the possession of the Petersons was not adverse to the right, title, and interest of the estate or of the heirs and that the Petersons had not acquired any right, title, or interest in or to the premises described in the complaint or to any part thereof; the findings and conclusions that the action was not barred by the statute of limitations; the finding "that the principal and interest on said Dives Mortgage was now long past due and unpaid as alleged by said William E. Davis, administrator, in his said foreclosure proceeding; that $150.00 is a reasonable attorney's fee for the foreclosure of said mortgage," and that such finding was "outside the issue in said cause and was not supported by any evidence in the record"; the finding with respect to the rental value of the real estate, and in failing to find the amount of taxes assessed against the property and paid by the defendants, nor the amount of interest paid on the mortgage.

The plaintiffs filed and served cross-assignments of error on all parties concerned, including the administrator of the Dives estate, wherein it was assigned that the court erred in finding that "$1,200 of the Dives mortgage was used to pay off the mortgage executed by the administrator Henry Worley to the Cardon Company"; finding that the rental value of the premises belonging to the estate was equal only to the interest on the $1,200 estate mortgage and the taxes paid on the premises; finding that the defendants had paid the taxes and in failing to find that they had not paid them as provided by the statute to entitle them to acquire title by adverse possession; in finding as a conclusion of law

that the mortgage made by Anthone L. and Elizabeth Peterson was in effect a continuation of the estate mortgage given by Henry Worley administrator; failing to find that the claim of Davis as administrator of the Dives estate was barred by the statute of limitations; and in awarding judgment in the foreclosure proceedings in the sum of $1,200 in favor of Davis the administrator of the Dives estate against the estate of John Worley, deceased, and in fixing and awarding an attorney's fee in the foreclosure proceeding.

On the oral argument it was urged by the appellants that the respondents could not be heard upon their assignments of error, in so far as they relate to a challenge of the judgment in favor of Dives, and that if it was the intention of the respondents to assail that part of the judgment, they were required to prosecute a cross-appeal from such portion of the judgment, and that mere cross-assignments of error did not suffice for such purpose. It was contended by the respondent that the validity of the Dives mortgage in so far as it affected the property of the estate was dependent upon the right, title, and interest of the Petersons in and to the property of the estate, for if they had no such right, title, or interest, then the mortgage given to Dives on the property of the estate by Anthone L. Peterson and his wife was of no binding effect, and that such question was brought to this court by the appeal of the Petersons, a notice of which was served on Davis, the administrator of Dives.

Later the respondents applied to this court and urged that if all of the questions raised by their assignments of error could not be considered without a cross-appeal, then the assignment of errors made by them and which was served upon all of the parties concerned, including the administrator of Dives, be regarded as a cross-appeal, or that leave be given the respondents to now prosecute a cross-appeal. On such application we ruled that the cross-assignments of error could not be regarded as a cross-appeal, and that we

were not authorized at the time of the application to grant leave to take a cross-appeal, inasmuch as the time in which a cross-appeal could have been taken had long expired. The distinction between cross-assignments of error and a cross-appeal, the office of each, and when a cross-appeal is or is not required, are indicated in the case of *Jensen* v. *Utah Ry. Co.*, 72 Utah 366, 270 P. 349, and by the cases there cited. For various reasons the cross-assignments here may not be regarded as a cross-appeal. Hence a review of the record is restricted to the assignments of the appellants, and to the cross-assignments in so far as the latter may be regarded defensive.

It is claimed by the appellants that the action stated in the complaint is one in ejectment, and on such theory they, on various grounds, urge that the complaint did not state a cause of action, that no right of possession of the plaintiffs, at the commencement of the action was alleged nor any ouster or withholding of possession by the defendants, and as is claimed, a tenancy at will in effect being alleged, ejectment could not be maintained except upon allegations of notice of termination of the tenancy, of which there were none. The complaint is straggling, but regarding the "mishots" either as surplusage, or not as affecting what otherwise is sufficiently alleged, we think the fair intendment of the complaint is a statutory action under the provisions of Comp. Laws Utah 1917, § 7247, that "an action may be brought by any person against another who claims an estate or interest in real property adverse to him, for the purpose of determining such adverse claim"; and as provided by sections 7718, 7719, and 7720, which expressly authorize executors and administrators to bring actions to determine title and adverse claims to real property.

In *Wey* v. *Salt Lake City*, 35 Utah 504, 101 P. 381, this court held that our Code enlarged the ancient jurisdiction of courts of equity with respect to suits to quiet title and to determine adverse claims to real property; and in *Gibson* v. *McGurrin*, 37 Utah 158, 106 P. 669, it was held that a

suitor had a choice of remedies to sue either in ejectment or to quiet title. In some jurisdictions under Codes similar to ours it is held that the fictions of the action of ejectment at common law no longer exist where equity and law are administered in the same forum and under a single pleading, and where an action to quiet title or to determine conflicting claims to real estate may be brought indifferently by one in or out of possession, and, hence, technical allegations necessary in a common-law action for ejectment no longer are required. 9 Cal. Jur. 976, 977. This assignment is overruled.

It, however, is further urged that though the complaint be regarded as an action to quiet title, it nevertheless is faulty because it is not alleged that the plaintiffs were the owners or entitled to the possession of the real estate *at the commencement of the action,* and that it was not alleged that the estate or interest claimed or asserted by the defendants was *adverse or hostile* to the plaintiffs' alleged claim of title or interest. Let it be conceded that good pleading requires such averments, or allegations of other facts from which they necessarily or reasonably may be inferred. Here, there was no express averment that the plaintiffs at the commencement of the action were the owners of or entitled to the possession of the real estate. What is averred in such respect is that John Worley, the deceased, at the time of his death was the owner and in possession of the real estate; that Henry Worley was appointed, qualified, and acted as administrator of the estate and as such took charge of and possessed the real estate until with his permission and consent it was possessed by the appellants; and that Henry Worley since his appointment was, and at the commencement of the action he and his coadministrator were, the administrators of the estate. Under the holdings of this court in the cases of *Tate* v. *Rose,* 35 Utah 229, 99 P. 1003, 1005, and *Tate* v. *Shaw,* 35 Utah 240, 99 P. 1007, such allegations were sufficient to show title in the plaintiffs at the commencement of the action.

In the former this court said: "It is also contended that the complaint is defective in substance in that it merely alleged that the deceased, at the time of his death, was the owner and in possession of the lands in question. It is contended that this allegation is insufficient because it does not allege ownership at the time the action was commenced. While good pleading requires that facts be stated directly, and that the right of action be shown as of the date when the action is commenced, it does not follow that a statement in a pleading may not be aided by inference or presumption. If the deceased was the owner and in possession of the land at the time of his death, the law, in the absence of proof to the contrary, will presume that the title remained as it was; that is, the law will not presume that the title was parted with without allegation and proof to that effect." To support which the cases of *Kidder* v. *Stevens*, 60 Cal. 414, and *Eltzroth* v. *Ryan*, 89 Cal. 135, 26 P. 647, are cited. We think it is sufficiently alleged that the plaintiffs had title to maintain the action.

There is no express allegation that the asserted claims of the defendants are adverse or hostile to or in conflict with the alleged title of the plaintiffs. What is alleged in such respect is that such asserted claims or interest of the defendants, "if any they have, is junior and inferior" to the right, title, and interest of the plaintiffs, and that "the defendants have no valid right, title or interest in or to the said described premises nor any part thereof." To allege, as it is, that the asserted claims of the defendants were merely "junior and inferior" to the title and interest, etc., of the plaintiffs, does not show that such asserted claims were adverse or hostile to or in conflict with the plaintiffs' alleged title or interest. As the nature or character of the asserted claims are not alleged, it is somewhat difficult on the face of the complaint to ascertain that the asserted claims were adverse or hostile to or in conflict with the title or interests of the plaintiffs. Simple as are the requirements of allegations in a suit to.

quiet title, yet it is essential to aver that the asserted claims are adverse or hostile to or in conflict with the plaintiffs' alleged title or interest. It is enough if such allegations are made merely in general terms without alleging the nature or character of the asserted claims. When, however, that is not done, as here it was not, then something more should be alleged which tends to show that the asserted claims are adverse or hostile or in conflict.

However, what defect in such respect exists in the complaint is, as we think, aided by the answers and the counterclaims of the defendants. By the answer of the appellants it is expressly admitted that the deceased, John Worley, at the time of his death was the owner and in possession of the real estate in question and that the plaintiffs at the commencement of the action were the administrators of his estate, and by the answer and counterclaims of all of the defendants it is expressly averred that the Petersons, the appellants, by adverse possession acquired title to the premises, and for many years, since 1911 and up to and at the commencement of the action, possessed the premises exclusively, adversely, and hostile to all right, title, and interest of the plaintiffs. Such allegations aided the complaint and cured the claimed defect of the complaint in such respect. 1 Bancroft, Code. Pl. 1035; *Robbins* v. *Duggins,* 61 Utah 542, 216 P. 232.

The assignment that the findings that the defendants had not acquired title by adverse possession of the property in question and that the plaintiffs were the owners and entitled to possession are against the preponderance and greater weight of the evidence is also overruled. On the record we are well satisfied with the findings in such particulars. So, too, are we satisfied with the findings and conclusions that the action was not barred by the statute of limitations. The findings and conclusions with respect to such issues, and that the plaintiffs as administrators of the estate of John Worley, deceased, were the owners and entitled to the possession of the premises, are thus approved.

On the record we do not see how findings and conclusions with respect thereto well could have been otherwise.

The court did not find the amount of taxes paid by the appellants: Complaint is made of that. The finding as to the rental value of the premises is uncertain. Complaint is also made of that. The court found "that the undisputed evidence adduced by the plaintiffs" shows that the reasonable rental value was from $2 to $2.50 an acre. Then the court found that the reasonable rental value was "at least $150 a year which was at least equal to *the taxes* levied and assessed against the said premises and *the interest* payable under said mortgage." But no finding is made as to the amount of interest paid. The only finding as to the payment of the principal is that $1,200 of the $1,500 "received by said defendants on said Veurlam Dives mortgage was used to pay off the $1,200 mortgage." But the court did not find whether the Petersons or Dives or who paid it off. The finding implies that the Petersons did with moneys which they received from Dives. Still the court gave Dives a lien on the property covered by the $1,200 mortgage as though he had paid it. Such findings also are complained of by the Petersons, who served notice of appeal on all of the parties including the administrator of the Dives estate. Most of such findings affect the right, title, and interest of the appellants and of the respondents. Such findings in some particulars are wanting in sufficiency and in others are uncertain and conflicting. Are they material?

The court found that in 1911 Henry Worley, who as administrator had been in charge of the estate property, "turned the active charge and possession of said estate premises (320 acres) over to the defendants upon the understanding then had with said defendants that they would pay the interest and take care of and pay the ■ said mortgage (the $1,200 mortgage) and would also pay the taxes levied and assessed against the said property," and that under such understanding and with the consent of the administrator the defendants took and continued in

possession of the premises. That finding, though complained of, is supported by the record and is approved by us. Such being the terms and conditions under which the property was turned over and occupied by the Petersons, it is immaterial as to the amount of taxes paid by them. So, too, it is immaterial as to the rental value of the premises, for under the terms and conditions under which the court found the possession of the premises was turned over to them they were not required to pay or account for the rental value. They, however, were to pay all the taxes, and whatever unpaid taxes there may be (the court found they were not paid for the years 1926 to 1929, both inclusive) the Petersons were obligated to pay. However, no finding is made as to the amount thereof. So, too, under the terms and conditions under which the property was turned over to them, the Petersons were also to pay both principal and interest on the $1,200 mortgage. If the mortgage was not paid, the Petersons were under obligations to pay it. If the mortgage was paid, the plaintiffs were entitled to have it canceled.

There is a conflict in the evidence as to the giving of the $1,200 mortgage. Henry Worley, the administrator, testified he had no knowledge of giving it and that he nor the estate received any part of the purported consideration for which it was given. The mortgage by its terms was payable to the Cardon Company. The treasurer and manager of the company testified he had no knowledge of such mortgage and that on an examination of the books and records of the company he found no record or mention of any such transaction and that the company, and the court so found, made no claim of any interest in the mortgage. The court found and the recording records show that no assignment or cancellation had ever been made of the mortgage and that it still stood on the recording records uncanceled and unreleased.

On the contrary, there is evidence to show, records of probate proceedings in the Worley estate, that the mortgage

was given on petition of Henry Worley as administrator of the estate and by order of court to pay debts of the estate. And notwithstanding the testimony of the treasurer and manager of the company, a letter dated December 5, 1913, from the Cardon Company addressed to Henry Worley and to Anthone Peterson was put in evidence wherein it is stated that, "Mr. Kimball (who Kimball was or what interest he had in the loan is not shown) was in the other day" and asked "that you pay up mortgage of $1,200 on your property," etc.; a letter of date December 11, 1913, from the Cardon Company addressed to Anthone Peterson alone, in which it is stated, "We have yours of the 8th stating you are unable to make payment of mortgage and note on Worley loan" and that a settlement was insisted on at once; a letter of January 12, 1914, from the Cardon Company to Anthone Peterson alone, notifying him that no interest had yet been received "on the loan" and that the interest must be paid at once and the "principal be fixed up at an early date"; a letter from the Cardon Company to Henry Worley and Anthone Peterson dated February 17, 1914, reciting that Kimball had "served notice that your loan of $1,200 and interest" must be paid up in full in fifteen days or the matter would be put in the hands of an attorney for foreclosure; another letter on March 24, 1914, from the Cardon Company addressed to S. D. Davis, Malad, Idaho (who he was or what interest he had is not shown), in which it is stated that the company "had been requested to send you the amount owing by Henry Worley and Anthone Peterson" and that the amount due was $1,200 principal and $166.20 interest, a total of $1,366.20. It also was made to appear that on May 26, 1914, J. N. Ireland & Co., bankers at Malad, Idaho, issued a draft in the sum of $1,391.07 on McCornick & Co., bankers of Salt Lake City, Utah, payable to the Cardon Company, and a notation from the banker that the draft was purchased by "Anthone L. Peterson for Henry Worley and was charged against the estate of Veurlam Dives deceased," which draft was indorsed by the Car-

don Company to Thatcher Bros., bankers of Logan, Utah, and by it indorsed to any bank or bankers.

From all this we think it sufficiently appears that the $1,200 mortgage was given by Henry Worley, administrator of the Worley estate, for the use and benefit of the estate. The court in effect found that it was paid. Such finding was material because of the further finding that the Petersons agreed to pay the principal and interest of such mortgage. Whether they paid it from moneys which they borrowed from Dives, or from moneys derived by them from other sources, is of no concern of the administrator or heirs of the Worley estate. If Dives, from moneys which he loaned to the Petersons, paid off the $1,200 mortgage, he, by so doing, but discharged the Petersons' obligation. Since it was found and decreed that none "of the defendants" (except Maria Peterson, the wife of Charles Peterson, whose interest was that of an heir) had any right, title, or interest in or to the property of the estate, the Petersons giving Dives an unauthorized mortgage on the property of the estate for moneys which he loaned them did not help him, nor affect the obligation of the Petersons to pay off the $1,200 mortgage. Whether the Petersons as owners had any right, title, or interest in or to the property of the estate is one if not the most material of the questions presented on this appeal. If, as found by the court below, they had no such title or interest, then Dives acquired none in and to the property of the estate by the unauthorized mortgage given him by the Petersons for money loaned to them. Whether the $1,200 mortgage was or was not paid either by the Petersons, or by Dives for them, is, as between the Petersons and the Worley estate, a material question presented by the assignments of the appellants and by the cross-assignments of the administrator of the Worley estate. And thus since the mortgage was paid by one or the other it follows that as between the Petersons and the Worley estate the latter are entitled to a cancellation of the $1,200 mortgage.

It, however, is urged that since no cross-appeal was taken by the Worley estate, we are not, as between the Worley estate and the Dives estate, authorized to consider or review that part of the findings and judgment giving the Dives estate "a judgment against the said estate of John Worley deceased in his said foreclosure proceeding on the Veurlam Dives mortgage, in the sum of $1,200 including a pro rata share of attorney's fees fixed at a total attorneys fees of $150.00 said judgment being in the nature of an approved claim against the said Worley estate." In the first place, Dives was in privity with the Petersons. They, as has been seen, in 1914 gave him a mortgage which was renewed in 1924 on 40 acres of land with a water right owned by them, and on the 320 acres owned by the Worley estate and in and to which the court found and decreed they had no right, title, or interest, to secure the payment of a note of $1,500 executed by them for moneys borrowed by them from Dives. Inasmuch as the Petersons had no right or authority to give the mortgage on the property of the estate, Dives by virtue of the mortgage acquired no right, title, or intrest therein. The Dives estate as against the plaintiffs defended its right and title to the $1,500 mortgage on the property of the Worley estate on the theory that the Petersons had acquired title thereto by adverse possession. The court found and adjudged that claim, both as to the Petersons and as to the Dives estate, unfounded and decreed title to the plaintiffs. The Dives estate being a party to the cause in the court below and also a party on this appeal, if the title of the Petersons fall as it does by the decree of the court below, the title of the Dives estate acquired through them also falls.

In the next place, as also has been stated, when this action was commenced there was pending another action untried and undetermined in the same court wherein the administer of the Dives estate sought to foreclose the $1,500 Dives mortgage on both the 40 acres owned by the Petersons and the 320 acres owned by the Worley

estate, to which action the Petersons and the Worley estate were made parties. The two actions were not consolidated. On the contrary, the proceedings in the foreclosure action on stipulation of the parties and by order of court were suspended until a final disposition of this action. Notwithstanding the court found that no part of the $1,500 Dives mortgage had been paid, that the Petersons had neither right nor authority to give the mortgage on the 320 acres, the property of the Worley estate, and that they had not nor had the Dives estate any right, title, or interest therein and awarded title thereto to the Worley estate "free from any interest and claim on the part of the defendants or either of them," nevertheless, inasmuch as the court found that $1,200 of the $1,500 which the Petersons had borrowed from Dives and to secure which they gave him an unauthorized mortgage on the property of the estate were "used to pay off the Worley estate mortgage," the Dives estate in the foreclosure proceedings were given a lien on the 320 acres of the Worley estate "in the nature of an approved claim against the said Worley estate" together with a pro rata attorney's fee of $150. That such a proceeding on the face of the mandatory record of the court, the pleadings, the findings, the conclusions, and the judgment, is coram non judice and the judgment founded upon it void and subject to both collateral and direct attack is clear. In such respect we may say here, as was said in the case of *Stockyards Nat. Bank, etc.*, v. *Bragg, et al.*, 67 Utah 60, 245 P. 966, 973, that:

"So too must a judgment or sequestrating order fall for other errors of law apparent on the face of the mandatory record, such as showing the judgment obtained to be at variance with the practice of the court or contrary to well-recognized principles and fundamentals of the law. A fact apparent from the mandatory record, showing that fundamental law was disregarded in the establishment of the judgment, will render it null and void for all purposes. And a judgment founded upon such a record is subject to direct and collateral attack, and will, sua sponte, be noticed by courts and acted upon by them without regard to the wishes or relation of the parties named upon the record. In other words, all proceedings must appear to be coram judice."

Such doctrine is well settled and recognized by judicial authority. The nullity of such a judgment will keep nor will it be mellowed by age and may be assailed directly or collaterally whenever and wherever brought in question. It ought not to require any argument to show that on the mandatory record of the court below the decretal order or judgment that $1,200 of the $1,500 loaned by Dives to the Petersons on their unauthorized mortgage of the property of the Worley estate paid either by the Petersons or by Dives for them on the $1,200 mortgage may in no sense be regarded as an approved claim against the Worley estate and was without jurisdiction and void and ought to be vacated. The judgment in such particular is not only void but incongruous and in irreconcilable conflict with other findings and portions of the judgment.

The part of the judgment awarding title to plaintiffs in and to the 320 acres, the property of the estate, "free from any interest or claim on the part of the defendants or any of them" (except the interest which the defendant Maria Peterson as an heir has in and thereto), is affirmed. In other particulars the judgment is vacated, and the case remanded to the court below with directions to enter a judgment canceling the $1,200 mortgage. The plaintiff is given his costs in the court below as awarded by the court. Each party is required to pay his own costs on this appeal.

CHERRY, C. J., and ELIAS HANSEN, FOLLAND, and EPHRAIM HANSON, JJ., concur.

On Rehearing.

STRAUP, J.

A rehearing on the application of the appellants was granted. We have further considered the case. In our opinion heretofore filed we held the complaint was defective because it was not sufficiently alleged that the asserted claim or claims of the defendants were hostile and adverse to the alleged title of the plaintiff, but that the complaint

in such particular was aided by the answer and counterclaim of the defendants in which it was alleged that they "claimed" and acquired title to the premises in question by adverse possession and for many years since 1911 "possessed the premises exclusively, adversely and hostile to all right, title and interest of the plaintiffs." The rule as stated by us and as shown by the authorities cited is recognized and not disputed by the appellants, but they contend that here there was no aider, for the reason that what we regarded by the answer and counterclaim as such was denied by the plaintiffs in their reply; and that an allegation in an answer or counterclaim which is denied in a reply cannot be used to aid or supply a material allegation in the complaint.

It further is contended that we erred in approving the finding of the trial court that Henry Worley, the administrator, turned the possession of the premises over to the defendants upon "the understanding that they would pay the interest and take care of and pay the said mortgage (the $1,200 mortgage) and would also pay the taxes levied and assessed against the said property," for the reason that such finding, as is asserted, is not within the issues.

Upon the filing of the petition we thought there was sufficient merit to it to require a re-examination of the case, and so granted the rehearing. However, on further consideration of the case we are satisfied with the disposition made of it. We recognize the rule, and to that effect are the authorities and as stated in 1 Bancroft, Code Pleading, 1038, and cases there cited, that a plaintiff may not rely upon a pleading of his adversary where he has specifically denied in his reply the allegations which he later relies on for assistance. As is seen, the plaintiffs had not alleged that the asserted claims of the defendants were hostile or adverse to the alleged title of the plaintiffs. In the answer and counterclaim of the defendants it was alleged that the defendants "claimed," acquired, and held the premises "adversely to said plaintiffs and each of them and to the world" and that they ever since 1911 were in the "open,

notorious and exclusive adverse possession" of the property and paid all the taxes thereon "adversely to the plaintiffs." To that the plaintiffs filed a reply, not denying that the defendants "claimed" to possess the premises adversely to the plaintiffs, but alleged that the defendants took possession of the premises and held them with the consent and acquiescence of the administrator, Henry Worley, and continued to remain in the possession with his consent and acquiescence and with the assurance that they would take care of the premises, pay a reasonable rental value therefor, and pay all the taxes, and denied that the defendants took or remained in possession hostile or adverse to the rights or title of the plaintiffs. So, while the fact that the defendants had acquired title to the property by adverse possession was denied, nevertheless that the defendants, as stated in their answer and counterclaim, "claimed and asserted" title by adverse possession hostile and adverse to the alleged title of the plaintiffs was not denied. The case thus does not come within the rule contended for by the appellants.

Now as to the finding complained of: The plaintiffs by their complaint alleged that the $1,200 note payable to the Cardon Company was without consideration, that it was unassigned by the company, and though the mortgage given to secure the note was recorded, yet the company claimed no interest therein and had not assigned any. The plaintiffs therefore prayed to have the mortgage canceled. It is further alleged by the plaintiffs that the property was leased or the possession thereof turned over to the defendants upon an agreement that they pay a reasonable rental value therefor and the taxes, which it was alleged the defendants had failed to do. The defendants denied that and alleged title by adverse possession. The plaintiffs replied thereto by alleging that the possession of the defendants was with the consent and acquiescence of Henry Worley, administrator. Because it was not alleged in either the complaint or the reply that the defendants

had also agreed to *pay the mortgage*, it is urged that the finding that the defendants had agreed to do so was not within the issues. We think such fact, though not expressly alleged, yet was relevant and material to the issue of adverse possession, that is, as to whether the possession was hostile and adverse as alleged by the defendants, or with the consent and acquiescence of Henry Worley, the administrator, as alleged by the plaintiffs, and thus was within a material issue presented by the pleadings. So too was the fact, especially the payment of the mortgage, relevant and material as bearing on the payment or an accounting of the rental value of the premises. By the judgment of the court below the appellants Peterson were given the entire use and benefit of the premises for a period of more than eighteen years substantially for mere payment of taxes. If, in addition, they are required also to pay the mortgage as the court found they had agreed to do and as the evidence shows they did with moneys borrowed by them from Dives, we think they, least of any of the parties to the record, have cause to complain. There are other matters presented on the rehearing, but we think they all are properly disposed of by the opinion.

The opinion heretofore filed is therefore confirmed.

All the Justices concur.